**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MICHAEL SPEARS and
KELLY SPEARS

    Plaintiffs,      Case No. 2:24-cv-00527-GJF-JHR

v.

ALIBABA SINGAPORE E-COMMERCE
PRIVATE LTD.; ALIBABA GROUP
HOLDING LTD.; DOES 1 through 10
Inclusive and BLACK AND WHITE
CORPORATIONS,

    Defendants.


**THE ALIBABA DEFENDANTS' MOTION**
**TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND......................................................... 4

III.  THE CLAIMS AGAINST THE ALIBABA DEFENDANTS SHOULD BE DISMISSED
      BECAUSE THE COURT LACKS PERSONAL JURISDICTION ................................... 7

   A.   The Court Lacks General Jurisdiction Over the Alibaba Defendants. ........................... 9

   B.   The Court Lacks Specific Jurisdiction Over the Alibaba Defendants. ......................... 12

      1.    *AGHL does not operate Alibaba.com and was not involved in the transaction.* ...... 14

      2.    *Neither AGHL nor Alibaba Singapore was a party to Niuniu's trampoline sale.* .... 15

      3.    *Whether the Court uses the Schrader standard or the Zippo test, neither Alibaba
            Defendant purposefully directed Niuniu's sale of the trampoline to New Mexico.* .. 17

      4.    *Alibaba.com's Trade Assurance Program does not create personal jurisdiction.* .... 23

   C.   Exercising Personal Jurisdiction Over the Alibaba Defendants Would Offend
        Traditional Notions of Fair Play and Substantial Justice............................................. 24

IV.   CONCLUSION................................................................................................ 27

i

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,*
    751 F.3d 796 (7th Cir. 2014) ................................................................................. 13

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002) ........................ 12

*Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 107 S. Ct. 1026 (1987).......... 26

*Atmos Nation Ltd. Liab. Co. v. Alibaba Grp. Holding Ltd.,* No. 0:15-cv-62104-KMM,
    2016 U.S. Dist. LEXIS 33228 (S.D. Fla. Mar. 15, 2016) ........................................... 15

*Baldwin v. Athens Gate Belize, LLC*, Civil Action No. 18-cv-00586-PAB-NYW,
    2019 U.S. Dist. LEXIS 164295 (D. Colo. Sep. 24, 2019) ................................... 13, 17

*Cepia, L.L.C. v. Alibaba Grp. Holding Ltd.*, No. 4:11-CV-273 SNLJ,
    2011 WL 5374747 (E.D. Mo. Nov. 8, 2011) .............................................................. 15

*Chavez v. Bridgestone Ams. Tire Operations, LLC*, 2022-NMSC-006, 503 P.3d 332.................. 9

*ClaimSolution, Inc. v. Claim Sols., LLC*, 2017 WL 2831330 (D. Kan. June 30, 2017) .............. 18

*Compuserve, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir. 1996) ....................................... 19

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ................................................... 9, 10, 14

*Doe v. Roman Cath. Diocese of Boise, Inc.*, 1996-NMCA-057, ¶ 11,
    121 N.M. 738, 918 P.2d 17 ........................................................................................ 2

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008) ...................... 13

*Englert v. Alibaba.Com Hong Kong Ltd.*, No. 4:11CV1560 RWS,
    2012 WL 162495 (E.D. Mo. Jan. 19, 2012) .............................................................. 15

*Espat v. Wissenback.* No. 14-cv-1054 SMV/LAM,
    2015 U.S. Dist. LEXIS 193809 (D.N.M. Feb. 27, 2015) ........................................... 21

*Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, No. 2:15-cv-2049-JRG,
    2016 U.S. Dist. LEXIS 195917 (E.D. Tex. Aug. 31, 2016) ....................................... 15

**Cases (cont.)**

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021) .......................... 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S. Ct. 2846 (2011).......... 9

*Hunt v. Just in Time Cargo,* No. 1:18-cv-1077-KG-JFR,
    2022 Westlaw 35826 (D.N.M. Jan. 4, 2022) ................................................................22-23, 26

*In re Platinum & Palladium Antitrust Litig.*, No. 14-cv-9391-GHW,
    2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ........................................................................ 14

*Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, 200 F. Supp. 3d 1194 (D. Kan. 2016)..... 21

*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) ........... 9

*Keck v. Alibaba.com, Inc.*, No. 17-cv-05672-BLF (N.D. Cal. Aug. 30, 2018) ........................... 15

*Kindig It Design, Inc. v. Creative Controls, Inc.*, 157 F. Supp. 3d 1167 (D. Utah 2016) ........... 18

*Miche Bag, LLC v. Cook*, No. 2:09-CV-166TC,
    2009 U.S. Dist. LEXIS 51673 (D. Utah June 17, 2009)......................................................... 22

*Nat'l Fair Hous. All. v. Brookdale Santa Fe*, 621 F. Supp. 3d 1271 (D.N.M. 2022)..................... 2

*Parnell Pharms., Inc. v. Parnell, Inc.*, No. 14-cv-03158-EJD,
    2015 WL 5728396 (N.D. Cal. Sept. 30, 2015) ...................................................................... 14

*Res. Assocs. Grant Writing & Eval. Servs., Inc. v.*
    *Southampton Union Free Sch. Dist.*, 193 F. Supp. 3d 1200 (D.N.M. 2016)...................... 1, 11

*Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980)...................................... 21

*Shrader v. Biddinger*, 633 F.3d 1235 (10th Cir. 2011)....................................................11-13, 25

*Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292 (10th Cir. 1999)........................... 11

*Sproul v. Rob & Charlies, Inc.* 2013-NMCA-072, 304 P.3d 18............................................10-11

*Stonebrook Jewelry, Ltd. Liab. Co. v. Revolution Jewelry Works, Inc.*, No.
    2:22-cv-328-HCN-JCB, 2023 U.S. Dist. LEXIS 143670 (D. Utah Aug. 15, 2023)..... 13, 17, 25

**Cases (cont.)**

*Sublett v. Wallin*, 2004-NMCA-089, 136 N.M. 102, 94 P.3d 845 ................................................ 17

*Tercero v. Roman Cath. Diocese of Norwich*, 2002-NMSC-018, 132 N.M. 312, 48 P.3d 50 ....... 8

*Vela v. Sterigenics U.S., LLC*, No. 23-cv-00363-JCH-GBW,
    2024 U.S. Dist. LEXIS 3943 (D.N.M. Jan. 8, 2024) ....................................................... 7

*Walden v. Fiore,* 571 U.S. 277, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) ................................ 25

*Wenz v. Memery Crystal*, 55 F.3d 1503 (10th Cir. 1995) .............................................................. 2

*XMission, L.C. v. Fluent LLC,* 955 F.3d 833 (10th Cir. 2020) ................................................ 7, 13

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) ............. 9, 17, 18, 19

**Rules**

Fed. R. Civ. P. 12(b)(2) .......................................................................................................... 1, 27

Fed. R. Evid. 201 ....................................................................................................................... 20

N.M. R. Evid. 11-201 ................................................................................................................. 20

Defendants Alibaba Group Holding Limited ("AGHL") and Alibaba.com Singapore E-Commerce Private Limited ("Alibaba Singapore") (collectively, the "Alibaba Defendants"), by and through their attorneys of record, Sutin, Thayer & Browne, APC and Arch & Lake, LLP (*pro hac vice* forthcoming), respectfully move this Court to dismiss the claims against them for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## I.     INTRODUCTION

Plaintiff's Second Amended Complaint[1] alleges claims against the Alibaba Defendants, among others,[2] based on various theories of products liability and negligence under New Mexico law. (*See generally* SAC.) These claims arise from injuries to Mr. Spears, then a resident of Otero County, New Mexico, allegedly caused by a defective trampoline at a recreational facility operated by Alamo Jump, LLC in Alamogordo, New Mexico. But this Court lacks personal jurisdiction over AGHL — a Cayman Islands company— and Alibaba Singapore—a company incorporated and located in the Republic of Singapore—neither of which has any ties to the State of New Mexico or any contacts with New Mexico related to the facts giving rise to Plaintiffs' claims.

Despite bearing the burden to establish personal jurisdiction over each defendant by a preponderance of the evidence (*see Res. Assocs. Grant Writing & Eval. Servs., Inc. v. Southampton Union Free Sch. Dist.*, 193 F. Supp. 3d 1200, 1220 (D.N.M. 2016) (citations omitted); *Doe v. Roman Cath. Diocese of Boise, Inc.*, 1996-NMCA-057, ¶ 11, 121 N.M. 738, 742, 918 P.2d 17, 21

---

[1] *See* Exhibit ("Ex.") A –Second Amended Complaint for Personal Injury and Punitive Damages, dated June 6, 2023 ("SAC").

[2] Aside from Alamo Jump, LLC and the Alibaba Defendants, the SAC lists "DOES 1 through 10, Inclusive, and BLACK AND WHITE CORPORATIONS" as defendants. The SAC also refers to "Black and White Corporation(s)" at ¶6, but never explains the purported role(s) of any such corporations or why Plaintiffs believe such corporation(s) or "DOES" exist.

(citations omitted)), Plaintiffs allege no facts about contacts between either of the Alibaba Defendants and New Mexico that could support the exercise of specific jurisdiction by a New Mexico court. Plaintiffs try to plead around this threshold issue with allegations that fail to distinguish between AGHL and Alibaba Singapore, and numerous allegations lumping the Alibaba Defendants together with the jump park operator, the seller of the trampoline (unnamed, but known to be a Chinese company named Niuniu Amusement Equipment Co., Ltd. (hereafter "Niuniu" or "Seller")), and various unknown defendants with fictitious names ("DOES" and "BLACK and WHITE CORPORATIONS"). These allegations obfuscate the purported role of each party in the alleged wrongdoing, and do not establish personal jurisdiction over the Alibaba Defendants.

When analyzing personal jurisdiction, the court should not accept Plaintiffs' allegations as true when they are contradicted by sworn testimony. *See Nat'l Fair Hous. All. v. Brookdale Santa Fe*, 621 F. Supp. 3d 1271, 1277 (D.N.M. 2022) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). And importantly, even when uncontradicted, "only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Id.* Plaintiffs have made conclusory allegations that the "Alibaba Defendants installed, supplied, designed, developed, engineered, manufactured, fabricated, assembled, equipped, tested, or failed to test, approved, repaired, labeled, advertised, promoted, marketed, supplied, distributed, and/or sold the trampoline apparatus to the consuming public in the State of New Mexico and throughout the United States." (SAC, ¶ 39.) As shown below, none of that is true. Indeed, these claims are wildly inconsistent with other allegations in the SAC, including Plaintiffs' description of the Alibaba Defendants as, respectively, a "multinational technology company" and "a holding company." (*See id.* ¶¶ 4-5.)

2

Despite Plaintiffs' unsupported allegations, neither Alibaba Defendant has engaged in direct transactions with consumers in New Mexico or sold the trampoline at issue here. Neither Alibaba Defendant was involved in any way with the design, development, engineering, manufacturing, fabricating, assembly, equipping, testing, or approval of the trampoline Niuniu sold to Alamo Jump.[3] Plaintiffs acknowledge that Alamo Jump, not the Alibaba Defendants, installed and maintained the trampoline and supplied it to the Plaintiffs and the general public. (See *id.*, ¶¶ 23-24.) Finally, AGHL had no connection at all to the marketing, promotion or advertising of the trampoline, while Alibaba Singapore's alleged "involvement" in those activities derives solely from its status as the operator of Alibaba.com. But merely operating a digital marketplace which attracts Buyers and Sellers from around the world does not establish personal jurisdiction (general or specific) over Alibaba Singapore in New Mexico.

As relevant to this case, Alibaba.com is nothing more than the online marketplace where a willing third-party Seller, Niuniu, established a storefront, promoted its products, and sold a trampoline kit to a willing third-party Buyer, Alamo Jump. The Alibaba Defendants did nothing to market, promote, or advertise that particular trampoline. (*See* Gong Decl., ¶19; Liu Decl., ¶ 23.) Alibaba Singapore did nothing for Niuniu that it does not do for or make available to each of the myriad Sellers on Alibaba.com. (Gong Decl., ¶ 21.) Promoting the website itself is quite different from promoting a particular product. Plaintiffs' lawsuit against the Alibaba Defendants makes as

---

[3] *See* Ex. B - Declaration of Kaixuan Gong in Support of the Alibaba Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, dated April 8, 2024, ("Gong Decl."), ¶¶ 16-18; Ex. C – Declaration of Mengyao Liu in Support of the Alibaba Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, dated April 8, 2024, ("Liu Decl."), ¶¶ 20-22.

much sense as suing the manager of their local brick-and-mortar shopping mall over injuries caused by a defective dishwasher they bought from Sears.

Plaintiffs have not alleged facts, as opposed to unsupported conclusions and hornbook legal allegations, regarding either AGHL or Alibaba Singapore sufficient to establish personal jurisdiction in New Mexico. Nor have Plaintiffs alleged facts sufficient to establish that the actions of Niuniu, Alamo Jump, or any other entity have created such jurisdiction over the Alibaba Defendants. Plaintiffs allege no facts showing that Alibaba Singapore is a mere alter ego of AGHL, or that Niuniu or Alamo Jump was an agent of either Alibaba Defendant. The existence of personal jurisdiction over Alibaba Defendants depends on their actions, so the Court should dismiss Plaintiffs' claims against the Alibaba Defendants for lack of jurisdiction.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Michael and Kelly Spears are residents of New Mexico. (SAC, ¶¶ 1-2.) Plaintiffs allege that Michael Spears was injured while jumping into a foam ball pit with his children at a trampoline park operated by defendant Alamo Jump LLC ("Alamo Jump"). (*Id*., ¶¶ 30-32.) Alamo Jump operates a trampoline park with a foam ball pit open to the general public in Alamogordo, New Mexico. (*Id*., ¶¶ 15, 24.) Plaintiffs allege the injury was caused by a concealed metal frame in the trampoline and by the allegedly inadequate depth of the balls. (*Id*., ¶¶ 25-29.) Plaintiffs further allege that Alamo Jump purchased the trampoline kit through Alibaba.com, and that Alamo Jump's employees thereafter installed and maintained the trampoline. (*See* SAC, ¶¶ 15-16.)[4]

---

[4] *See also* Ex. D - Attachment ("Att.") B to Plaintiffs' Response to Motion to Dismiss for Lack of Personal Jurisdiction, dated April 4, 2023 ("Pl. Resp.") (Alamo Jump's responses to Plaintiffs' Interrogatories 25-26).

On December 20, 2022, Plaintiffs filed a First Amended Complaint in the 12th Judicial District Court of New Mexico, naming as defendants three Alibaba entities headquartered in the United States.[5]  During the briefing on those defendants' Motion to Dismiss, Plaintiffs revealed they had identified the company that sold the trampoline, Niuniu. (*See* Ex. F - Att. C to Pl. Resp. ("Order Details").) After the parties had fully briefed that motion, Plaintiffs dismissed those defendants and filed a Second Amended Complaint. (*See* Ex. G – Order dated 06.02.2023.)

When Plaintiffs filed the SAC on June 6, 2023, the Seller was not named as a defendant (*see* Ex. A), even though Plaintiffs have known Niuniu's name, physical address, email address, and telephone number (and the name of a contact person) since well before filing their Second Amended Complaint. (*See* Ex. D.) Plaintiffs have reportedly settled their claims against Alamo Jump (*see* Ex. H -  Email from T. Guebert to P. Curtin, dated 02.08.2024), so only the Alibaba Defendants remain in this case.

### *Alibaba Group Holding Limited*

As noted above, AGHL is a Cayman Islands corporation with offices in China. (*See* SAC, ¶ 4; *see also* Liu Decl., ¶ 5.) AGHL is the parent company of entities that, among other things, manage and operate online and mobile commerce platforms for third parties and thereby provide the technology, infrastructure, and marketing reach to help those third parties establish an online presence to conduct commerce with consumers and businesses. (Liu Decl., ¶¶ 6-7.)  AGHL is a separate legal entity from all of its subsidiaries and maintains its own books and records. (*Id.*, ¶¶

---

[5] *See* Ex. E – First Amended Complaint for Personal Injury and Punitive Damages, dated December 20, 2022.

8-9.) AGHL is a non-operating holding company with no offices in New Mexico and no employees anywhere in the world. (*Id.*, ¶¶ 10-11.)

Thus, AGHL does not exercise day-to-day control over Alibaba Singapore or any of its subsidiaries. (*Id.*, ¶ 12.) AGHL does not operate, control or design the Alibaba.com website, or exercise any control over the products listed for sale and sold by the third-party storefronts on Alibaba.com.  (*Id.*, ¶ 13.) AGHL does not manufacture, sell or distribute any of the products listed for sale on the third-party storefronts on Alibaba.com, nor does it own, control or take possession of any such products.  (*Id.*, ¶ 14.) AGHL is not registered to conduct business in New Mexico (or in any other state in the United States) and neither directs nor specifically tailors any of its business activities to individuals or businesses in New Mexico. (*Id.*, ¶¶ 15-16.) AGHL has never rented, leased, owned, or used any real or personal property in New Mexico and does not maintain or use any bank accounts in New Mexico. (*Id.*, ¶ 17.) AGHL does not file tax returns or pay income taxes in the State of New Mexico. (*Id.*, ¶ 18.)

AGHL's only contacts with the United States are that it is listed on the New York Stock Exchange ("NYSE") (under the ticker BABA) and has an agent for service of process in New York solely for securities litigation arising from that listing. (*Id.*, ¶ 19.) AGHL has no contacts whatsoever with the State of New Mexico.

### *Alibaba.com Singapore E-Commerce Private Limited*

Alibaba Singapore is incorporated and headquartered in the Republic of Singapore. (*See* SAC, ¶ 5; *see also* Gong Decl., ¶ 5.) Alibaba Singapore is a separate legal entity from all other Alibaba entities and maintains its own separate books and records. (*Id.*, ¶¶ 6-7.) Alibaba Singapore has no employees or offices in New Mexico. (*Id.*, ¶¶ 8-9.) Alibaba Singapore operates the

Alibaba.com website, which serves as an online B2B e-commerce platform (digital marketplace) to facilitate transactions between a wide variety of third-party merchants and their customers. (*Id.*, ¶ 10.) Alibaba Singapore does not manufacture, sell or distribute any of the products listed for sale on the third-party storefronts on Alibaba.com. (*Id.*, ¶ 11.) Nor does Alibaba Singapore own, control, or take possession of such products. (*Id.*) Alibaba Singapore is not registered to conduct business in New Mexico (or in any other state in the United States) and neither directs nor specifically tailors any of its business activities to individuals or businesses in New Mexico or the United States. (*Id.*, ¶¶ 12-13.) Alibaba Singapore has never rented, leased, owned, or used any real or personal property in New Mexico and does not maintain any bank accounts in New Mexico. (*Id.*, ¶ 14.) Alibaba Singapore does not file tax returns or pay income taxes in New Mexico. (*Id.*, ¶ 15.) In short, Alibaba Singapore has no direct contacts with New Mexico and any attenuated, indirect "contacts" arise only through Alibaba.com.

### III. THE CLAIMS AGAINST THE ALIBABA DEFENDANTS SHOULD BE DISMISSED BECAUSE THE COURT LACKS PERSONAL JURISDICTION

"A federal court may not exercise personal jurisdiction over an out-of-state defendant unless (1) an applicable statute authorizes service of process on that defendant and (2) the exercise of statutory jurisdiction comports with constitutional due process." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020). "New Mexico's long-arm statute 'extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *Vela v. Sterigenics U.S., LLC*, No. 23-cv-00363-JCH-GBW, 2024 U.S. Dist. LEXIS 3943, at *3 (D.N.M. Jan. 8, 2024) (quoting *Tercero v. Roman Cath. Diocese of Norwich*, 2002-NMSC-018, ¶ 6, 132 N.M. 312, 48 P.3d 50). So, determining whether jurisdiction exists over the Alibaba Defendants merges with

determining the limits on jurisdiction imposed by the due process clause given the facts of this case. Federal law and precedent govern this inquiry.

This Court has neither general nor specific jurisdiction over the Alibaba Defendants. The Alibaba Defendants do not have and have not had the continuous and systematic contacts required to make them "at home" in New Mexico and thus subject to general jurisdiction. The Court also lacks specific jurisdiction because Plaintiffs cannot show *any* contact between the Alibaba Defendants and New Mexico giving rise to Plaintiffs' claims. To begin with, AGHL (as a non-operating holding company) did not participate at all in the chain of events leading to Plaintiffs' claims — not during the design, manufacture, sale, distribution, installation, or maintenance or use of the trampoline at issue. And Alibaba Singapore "participated" only insofar as the operator of Alibaba.com, and in that the Seller and the Buyer, Niuniu and Alamo Jump, had agreed that Alibaba.com's Trade Assurance Program should cover their transaction. (*See* Ex. F.)

But Niuniu's sale to Alamo Jump through Alibaba.com did not establish the minimum contacts required to create specific jurisdiction over Alibaba Singapore for at least two reasons. First, Niuniu's sale does not show Alibaba Singapore purposefully directing its activities towards New Mexico. Second, Plaintiffs' claims do not arise out of or relate to Alibaba Singapore's actions. Therefore, the sale does not confer personal jurisdiction in New Mexico over Alibaba Singapore under Tenth Circuit law, or even under the so-called *Zippo* sliding-scale test for jurisdiction over online actors.[6] (Assuming that this test — articulated at the dawn of Internet commerce when Amazon still sold nothing but books — remains valid.) Alibaba.com falls towards the passive end

---

[6] See *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).

of the *Zippo* sliding scale, particularly as concerns Buyers on the website (who need not register and pay to become Alibaba.com Members). (*See* Gong Decl., ¶ 22.)

Finally, even if the Court concludes that Alibaba Singapore had sufficient contact with New Mexico to create specific jurisdiction in this case, the Court: (a) should not attribute those contacts to AGHL, and (b) should decline to exercise personal jurisdiction over either Alibaba Defendant because doing so would offend traditional notions of fair play and substantial justice.

A.  **The Court Lacks General Jurisdiction Over the Alibaba Defendants.**

As noted above, AGHL is incorporated under the laws of the Cayman Islands and maintains its principal executive offices in China. (Liu Decl., ¶ 5.) Alibaba Singapore is incorporated under the laws of the Republic of Singapore and maintains a principal place of business in Singapore. (Gong Decl., ¶ 5.) Plaintiffs do not contend that jurisdiction exists over either entity based on its state of incorporation or principal place of business. (*See* SAC, ¶¶ 4-5.)

Further, the Alibaba Defendants are not subject to general jurisdiction because they do not have and have not had the continuous and systematic contacts with New Mexico to render them essentially at home in the state. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)); *see Chavez v. Bridgestone Ams. Tire Operations, LLC*, 2022-NMSC-006, 503 P.3d 332, 341 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (same)). "[T]he general jurisdiction inquiry does not 'focu[s] solely on the magnitude of the defendant's in-state contacts'"

9

but, instead, "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Daimler AG*, 571 U.S. at 139 n.20, 134 S. Ct. at 762. "A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* As noted above, AGHL does not operate at all, and Alibaba Singapore operates in Singapore. While Alibaba.com is accessible to individuals with Internet access from many places on Earth, that does not make Alibaba Singapore "at home" in all of those places, or at home in in New Mexico. *See id.*

Outside of the so-called "paradigm" bases for jurisdiction, *i.e.*, the place of incorporation and the principal place of business, a corporation is subject to general jurisdiction only in an "exceptional case." *Daimler AG*, 571 U.S. at 139, n.19. For example, when a prominent multinational auto manufacturer "extensively promoted, sold, and serviced" cars in a particular state, maintained thirty-six dealerships in that state selling cars and parts, and serviced the cars of state residents, even those contacts did not create general jurisdiction in the state. *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1023-24, 1032 (2021).

Plaintiffs admit New Mexico is not the home jurisdiction or principal place of business for either Alibaba Defendant, (*see* SAC, ¶¶ 4-5), and Plaintiffs' other allegations, to the extent not controverted, amount to nothing more than claims that the Alibaba Defendants have done some business in New Mexico, including through Alibaba.com. (*See id.*, ¶¶ 9, 22.) These allegations are a far cry from the extensive contacts alleged in the *Ford Motor Co.* case, which the Supreme Court deemed insufficient for general jurisdiction. *See Ford Motor Co.*, 141 S. Ct. at 1024. Therefore, they do not establish general jurisdiction over the Alibaba Defendants.

Plaintiffs' allegations here are instead similar to those in the *Sproul* case. *See Sproul v. Rob & Charlies, Inc.* 2013-NMCA-072, 304 P.3d 18. Much like the third-party plaintiff in *Sproul*,

Plaintiffs "ha[ve] not provided evidence that [the Alibaba Defendants are] incorporated under the laws of New Mexico, that [they have] corporate operations, employees, or agents here, or that [they have] manufacturing facilities in the state." *Sproul,* 2013-NMCA-072 at ¶ 13. Plaintiffs do allege sales into New Mexico, as did the third-party plaintiff in *Sproul*. *Id.* at ¶ 14; *see* SAC ¶¶ 10, 22. But sales made through Alibaba.com are not sales by Alibaba Singapore, and regardless, "the flow of a manufacturer's goods into the forum state alone does not create sufficient ties with that state to give it general jurisdiction over the manufacturer." *Id.* The New Mexico Court of Appeals did not find general jurisdiction in *Sproul*, nor should this Court find it here.

Plaintiffs' broad allegations about the size and scope of "Alibaba," which presumably refers to the entire Alibaba family of companies, and about Alibaba.com in particular (*see* SAC, ¶¶ 9-10, 22), even if taken as true, do not show the Alibaba Defendants deliberately using Alibaba.com to conduct commercial transactions on a sustained basis with a substantial number of New Mexico residents. *See, e.g., Shrader v. Biddinger*, 633 F.3d 1235, 1246 (10th Cir. 2011). These are not the kind of continuous and systematic affiliations that would subject the Alibaba Defendants to general jurisdiction in this state. *See Soma Med. Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1297-98 (10th Cir. 1999) (operation of web site accessible in the forum insufficient for finding general jurisdiction).

Plaintiffs bear the burden of establishing personal jurisdiction over each defendant. *See Res. Assocs. v. Southampton*, 193 F. Supp. 3d at 1220. Because Plaintiffs have not met that burden, this Court should not find general jurisdiction in New Mexico over AGHL or Alibaba Singapore.

**B.  The Court Lacks Specific Jurisdiction Over the Alibaba Defendants.**

This case involves online commerce, but the core of the specific jurisdiction analysis remains the same for the Alibaba Defendants as for any defendant: the court must examine the actions of each defendant in light of the "purposeful direction" standard and consider whether Plaintiff's claims truly arise from that defendant's alleged contacts with the forum state. *See Shrader*, 633 F.3d at 1240-41.

The rapid spread of broadband access and the explosion of online commerce over the past three decades have compelled the courts to consider how to apply personal jurisdiction to Internet activities. The Tenth Circuit has held, consistent with the growing consensus, that the general principles of jurisdiction based on due process remain the same but must be applied somewhat differently to reflect the realities of the new technology. *See id.* The Tenth Circuit in *Shrader* quoted the following passage from a case in which a Fourth Circuit panel explained the issue:

> Applying the traditional due process principles governing a State's jurisdiction over persons outside of the State based on Internet activity requires some adaptation of those principles because the Internet is omnipresent—when a person places information on the Internet, he can communicate with persons in virtually every jurisdiction. If we were to conclude as a general principle that a person's act of placing information on the Internet subjects that person to personal jurisdiction in each State in which the information is accessed, then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist. The person placing information on the Internet would be subject to personal jurisdiction in every State.

*Shrader*, 633 F.3d at 1240 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). To avoid "this untenable result," the courts must "adapt the analysis of personal jurisdiction to this unique circumstance by placing emphasis on the internet user or site *intentionally directing* his/her/its activity or operation *at* the forum state rather than just having the

activity or operation accessible there." *Id.* (emphasis original). The *Schrader* court identified the following "three salient factors" relevant to whether a defendant had purposefully directed its activities towards the forum: "(a) an intentional action … that was (b) expressly aimed at the forum state … with (c) knowledge that the brunt of the injury would be felt in the forum state." *Id.* (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069-70 (10th Cir. 2008)). Further, "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Id*. (citations omitted). And "personal jurisdiction requires more than 'simply operating an "interactive website" accessible in the forum state and sending emails to people who may happen to live there.'" *Fluent LLC,* 955 F.3d at 846 (quoting *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 802 (7th Cir. 2014)); *see Stonebrook Jewelry, Ltd. Liab. Co. v. Revolution Jewelry Works, Inc.*, No. 2:22-cv-328-HCN-JCB, 2023 U.S. Dist. LEXIS 143670, *8 (D. Utah Aug. 15, 2023) (forum residents' ability to order from defendant's website does not confer personal jurisdiction); *Baldwin v. Athens Gate Belize, LLC*, Civil Action No. 18-cv-00586-PAB-NYW, 2019 U.S. Dist. LEXIS 164295, at *8 (D. Colo. Sep. 24, 2019) (same).

Considered in light of this controlling and persuasive authority, Plaintiffs' allegations do not establish personal jurisdiction because they do not show either AGHL or Alibaba Singapore "purposefully directing" their activities towards New Mexico. Instead, the facts show that the trampoline sale to a New Mexico resident resulted from the decisions of others – the Seller, Niuniu (the Chinese company who listed the trampoline for sale on its Alibaba.com storefront), and Alamo Jump, Niuniu's customer (who traversed the Internet to search for products on Alibaba.com). This

sale by a willing third-party Seller to a willing third-party Buyer did not and could not create specific jurisdiction over the Alibaba Defendants in New Mexico.

### 1. AGHL does not operate Alibaba.com and was not involved in the transaction.

As described above (*see* Section II, *supra*), AGHL, a non-operating holding company, is not involved with the Alibaba.com website or its operation. (*See* Liu Decl., ¶¶ 12-14.) Plaintiffs seek to establish the minimum contacts required for personal jurisdiction over AGHL by imputing to AGHL actions of Alibaba Singapore, Alamo Jump, and the Seller. (*See* SAC, ¶ 7.) But Plaintiffs have not alleged sufficient facts to justify attributing to AGHL the actions of others.[7]

To impute the contacts of another entity to a defendant under agency theory, that defendant must exercise control over the third party's activities in the forum by "directing its agents or distributors to take action there." *Daimler*, 134 S. Ct. at 759 n.13. AGHL has no such operating control over and provides no such direction to Alibaba Singapore, or to any "agents or distributors." (*See* Liu Decl., ¶ 12.) And Plaintiffs allege no facts to suggest that AGHL has ever controlled or directed, or could control or direct, either Alamo Jump or Niuniu. Many courts have recognized this reality and refused to find personal jurisdiction over AGHL and other Alibaba entities in similar cases. *See e.g., Keck v. Alibaba.com, Inc.*, No. 17-cv-05672-BLF (N.D. Cal. Aug. 30, 2018), "Order" ECF No. 270 (dismissing AGHL from a copyright infringement case due to lack

---

[7] The only contact AGHL has with the United States is its NYSE listing. (Liu Decl. ¶ 19.) That listing alone does not justify exercising personal jurisdiction over AGHL anywhere in the United States, much less in New Mexico. *See In re Platinum & Palladium Antitrust Litig.*, No. 14-cv-9391-GHW, 2017 WL 1169626, at *46 (S.D.N.Y. Mar. 28, 2017) ("[T]he LPPFC's presence on NYMEX, or any other domestic OTC market or exchanges, fails to establish that it expressly aimed its conduct at the U.S."); *Parnell Pharms., Inc. v. Parnell, Inc.*, No. 14-cv-03158-EJD, 2015 WL 5728396, at *6 (N.D. Cal. Sept. 30, 2015) (declining to find personal jurisdiction over defendants merely because they were listed on the NASDAQ stock exchange because such listing does not show defendants aimed their conduct towards California).

of forum contacts); *Atmos Nation Ltd. Liab. Co. v. Alibaba Grp. Holding Ltd.,* No. 0:15-cv-62104-KMM, 2016 U.S. Dist. LEXIS 33228, at *14 (S.D. Fla. Mar. 15, 2016) (dismissing AGHL and another entity for lack of personal jurisdiction after Plaintiff's allegations lumped together multiple Alibaba entities as defendants in a trademark infringement suit); *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, No. 2:15-cv-2049-JRG, 2016 U.S. Dist. LEXIS 195917, at *3 (E.D. Tex. Aug. 31, 2016); *Englert v. Alibaba.Com Hong Kong Ltd.*, No. 4:11CV1560 RWS, 2012 WL 162495, at *4 (E.D. Mo. Jan. 19, 2012) (dismissing AGHL from a breach of contract case for lack of personal jurisdiction even though AGHL was the majority shareholder of a relevant operating entity); *Cepia, L.L.C. v. Alibaba Grp. Holding Ltd.*, No. 4:11-CV-273 SNLJ, 2011 WL 5374747, at *6 (E.D. Mo. Nov. 8, 2011) (dismissing AGHL from a trademark infringement case for lack of personal jurisdiction even though AGHL shared trademarks with, had the same chairman as, and had ownership interests in a relevant operating entity). This Court should do the same in this case and dismiss Plaintiffs' claims against AGHL.

### 2. *Neither AGHL nor Alibaba Singapore was a party to Niuniu's trampoline sale.*

Plaintiffs allege "upon information and belief" that the "Alibaba Defendants installed, supplied, designed, developed, engineered, manufactured, fabricated, assembled, equipped, tested, or failed to test, approved, repaired, labeled, advertised, promoted, marketed, supplied, distributed, and/or sold the trampoline apparatus in question to the consuming public in the State of New Mexico and throughout the United States." (SAC, ¶ 39.) As discussed above (*see* Sections I-II, *supra*), these allegations bear no resemblance to reality, and given their inconsistency with other allegations in the complaint, one might reasonably wonder whether Plaintiffs merely recite legal boilerplate while casting a wide net for deep-pocketed fish.

The Alibaba Defendants do not design, develop, test, manufacture, or distribute trampolines, and did not do any of those things for the trampoline in this case. (*See* Gong Decl., ¶¶ 16-19; Liu Decl., ¶¶ 20-23.) AGHL is a non-operating holding company, and Alibaba Singapore operates a website that creates digital marketplaces to facilitate transactions between third-party merchants and their customers. (*See* Gong Decl., ¶ 10; Liu Decl., ¶ 10.) Despite the Plaintiffs' conclusory allegations, neither AGHL nor Alibaba Singapore sold the trampoline or have engaged in direct transactions with New Mexico consumers. (*See* Gong Decl., ¶¶ 11, 25; Liu Decl., ¶¶ 14, 20, 25.) Contrary to Plaintiffs' allegations, documents in the record (proffered by Plaintiffs) show Alamo Jump did not purchase the trampoline "from Alibaba.com." (SAC, ¶ 16.) Instead, Alamo Jump purchased the trampoline from Niuniu "via Alibaba.com." (*See* Ex. D - Att. B to Pl. Resp. (emphasis added); Ex. F – Att. C to Pl. Resp. (Order details).) Alibaba Singapore merely operates Alibaba.com, which is an online marketplace similar in some respects to eBay or Etsy, and on which third-party merchants and their customers meet and consummate transactions. (*See* Gong Decl., ¶ 10.) Neither AGHL nor Alibaba Singapore ever owned the trampoline or ever had any claim to or interest in the trampoline. (*See* Gong Decl., ¶ 17; Liu Decl., ¶ 21.) Niuniu, not Alibaba Singapore or AGHL, contracted with Alamo Jump and then sold the trampoline to Alamo Jump. (*See* Gong Decl., ¶ 16; Liu Decl., ¶ 20; Exs. D & F.)

In sum, the only relationship between the Alibaba Defendants and the Plaintiff's personal injury claims is that Alamo Jump personnel went online in New Mexico, electronically traveled to the Alibaba.com website on their computer, searched that website and purchased the allegedly defective trampoline from a merchant there. AGHL had no connection at all to that sale, and Alibaba Singapore was just the website operator. Alibaba Singapore's actions, and its intentions

as the website operator, differ significantly from those of the Seller, who created its own electronic "storefront" on Alibaba.com, included the trampoline listing, and made the sale to Alamo Jump. Alibaba Singapore did not purposefully direct its activities towards New Mexico in particular or avail itself of the privileges of operating in New Mexico with respect to this sale. Therefore, the Court should not find specific personal jurisdiction over either Alibaba Defendant.

### 3. Whether the Court uses the *Schrader* standard or the *Zippo* test, neither Alibaba Defendant purposefully directed *Niuniu's* sale of the trampoline to New Mexico.

The result of the jurisdiction analysis remains the same, though, whether the Court applies the jurisdictional analysis set forth by the Tenth Circuit in *Schrader* and *Fluent* (among other cases), or the *Zippo* sliding-scale analysis adopted by the New Mexico state courts. Niuniu's sale to Alamo Jump through Alibaba.com does not constitute the minimum contacts by Alibaba Singapore with New Mexico required to confer specific jurisdiction.

Roughly twenty years ago, the New Mexico Court of Appeals adopted the *Zippo* sliding-scale test for personal jurisdiction based on website interactivity. *See Sublett v. Wallin*, 2004-NMCA-089, ¶ 29, 136 N.M. 102, 109, 94 P.3d 845 (citing *Zippo*, 952 F. Supp. 1119). The *Zippo* test remains in use in some courts, although a growing number of courts question its continued viability. *See, e.g., Stonebrook Jewelry*, 2023 U.S. Dist. LEXIS at *8 ("The court is not persuaded that these decisions [using the *Zippo* test] are consistent with Tenth Circuit and Supreme Court precedent."); *Baldwin*, 2019 U.S. Dist. LEXIS at *8 (D. Colo. Sep. 24, 2019) ("The Court agrees that *Zippo* is limited in its ability to guide modern internet-based personal jurisdiction inquiries. *Zippo* was decided over twenty years ago, and, in the years since, the internet has expanded and changed immensely."); *ClaimSolution, Inc. v. Claim Sols., LLC*, 2017 WL 2831330, at *3 (D. Kan. June 30, 2017) (declining to follow *Zippo* and instead applying the *Schrader* standard); *Kindig It*

17

*Design, Inc. v. Creative Controls, Inc.*, 157 F. Supp. 3d 1167, 1174 (D. Utah 2016) ("The *Zippo* test effectively removes geographical limitations on personal jurisdiction over entities [with] interactive websites. And because [that number] continues to grow exponentially, [the *Zippo* framework] would essentially eliminate the traditional geographic limitations on personal jurisdiction.").

The *Zippo* court applied existing legal principles to what was then a relatively new set of facts, in which the defendant's alleged forum contacts occurred via the Internet. *See Zippo*, 952 F. Supp. at 1124 ("[T]he development of the law concerning the permissible scope of personal jurisdiction based on Internet use is in its infant stages."). The *Zippo* court remained focused on the defendant's "forum-related activities" and where "the relationship between the defendant and the forum falls within the minimum contacts framework." *See id.* at 1122. But the *Zippo* test simply did not anticipate either the rapid and continuing multiplication of commercial websites or the development of digital marketplaces owned and operated by third-parties as their business.

The *Zippo* court stated that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.*, at 1124. As with the *Shrader* standards, this analysis does not focus on the total quantity of commercial activity. "The [specific jurisdiction] test has always focused on the "nature and quality" of the contacts with the forum and not the number of those contacts." *Id.* at 1127. Thus, the "size" of "Alibaba" or Alibaba.com (*see* SAC, ¶ 22) are irrelevant. Second, as with the *Shrader* standards, the *Zippo* analysis focuses on the actions of the entity conducting the commercial activity giving rise to the Plaintiff's claims.

*Zippo* was a Lanham Act case against a computer news service that used "Zippo" in several domain names. The *Zippo* court found that personal jurisdiction existed in Pennsylvania, and in the process articulated a sliding-scale test for jurisdiction over defendants who sell products or services over the Internet. *See Zippo*, 952 F. Supp. at 1125. At one end of the *Zippo* sliding-scale, if a defendant "clearly does business over the Internet" and "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet," then personal jurisdiction over that defendant is proper. *See id.* (*citing Compuserve, Inc. v. Patterson,* 89 F.3d 1257, 1260 (6th Cir. 1996) (reversing trial court finding of no personal jurisdiction in Ohio over a Texas resident who contracted with Compuserve and repeatedly uploaded work files to Compuserve in Ohio.))  At the other end, when "a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions," such "[a] passive Web site that does little more than make information available to those who are interested" does not justify exercising personal jurisdiction over the operator. *Id.* (citations omitted) The middle ground consists of "interactive Web sites where a user can exchange information with the host computer," and the *Zippo* court indicated that jurisdiction depended on the level of the website's interactivity with the forum resident involved in the relevant transaction and the commercial nature of the exchange of information on the website. *See id.* The ultimate question, reminiscent of the "purposeful direction" test, is whether "an entity intentionally reaches beyond its boundaries to conduct business with foreign residents" over the Internet. *See id.*

On the *Zippo* sliding scale, speaking broadly, Alibaba.com falls within that middle-ground as an interactive commercial website. But the fundamental difference between this case and those cases in which courts have exercised personal jurisdiction based on e-commerce is that

19

Alibaba.com is a digital marketplace for <u>third-party</u> transactions, <u>not</u> a website on which <u>the Alibaba Defendants</u> sell goods or services to consumers. Alibaba Singapore does not sell its own goods or services to consumers through Alibaba.com. (*See* Gong Decl., ¶ 11). Alibaba Singapore does not enter into contracts with the customers who visit Alibaba.com to purchase items from the third-party Sellers. (*See id.,* ¶¶ 22, 24.) Nor do visitors need to become Alibaba.com Members to search the website and make purchases. (*Id.*, ¶ 22.) Instead, as to visiting consumers (such as Alamo Jump) the Alibaba.com website primarily conveys product information listed by the third-party merchants and allows the consumers to transact with these merchants if they choose.[8]

Plaintiffs' specific factual allegations about the interactivity of Alibaba.com, to the extent they have merit, focus largely on the website's interaction with its Sellers (in this case Niuniu), who must establish accounts on the website and become Alibaba.com Members before creating and operating a third-party storefront. (*See* SAC, ¶ 21 (listing the website's monitoring of product safety recalls, the Member platform, and the Trade Assurance Program).) When Plaintiffs lump together all "users" of the Alibaba.com website (*see id.*), as when they lump together all Alibaba companies, they miss or obscure distinctions critical to the specific jurisdiction analysis.

When Buyers such as Alamo Jump enter information into the Alibaba.com website, they do so to make or facilitate purchases from third-party Sellers, not from Alibaba Singapore. The sales are between the Buyer and the Seller, not with Alibaba Singapore. (*See* Gong Decl., ¶¶ 23-24, 32, 34; *see also* Ex. F.)  The visiting consumers, not Alibaba Singapore, initiate the transactions

---

[8] The Alibaba Defendants request that the Court take judicial notice of the basic facts about Alibaba.com and the nature of consumer transactions on that website to whatever extent it deems necessary. *See* Fed. R. Evid. 201; N.M. R. Evid. 11-201. As with the operation of Amazon.com, those facts are generally known in New Mexico, easily verifiable from independent sources, and not subject to reasonable dispute.

with the Sellers. And Plaintiffs do not, and could not, allege any facts showing that Alibaba Singapore intentionally reaches beyond Singapore regarding any particular sale on Alibaba.com. Instead, the website operates along the lines of: "If you build it, [they] will come." And the merchants and their customers have indeed come to Alibaba.com.

 Indeed, the consumers who visit Alibaba.com to shop from foreign merchants and the merchants who join Alibaba.com to sell their goods are the parties intentionally "reaching" out of their home jurisdictions. And those activities do not establish personal jurisdiction over Alibaba Singapore (and assuredly not over AGHL), because each defendant's activities must provide the basis for personal jurisdiction, not actions by third parties. *See Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).

A merchant's listing on Alibaba.com, like Niuniu's trampoline listing, is like the AutoTrader.com listing at issue in *Espat v. Wissenback*. No. 14-cv-1054 SMV/LAM, 2015 U.S. Dist. LEXIS 193809, at *2 (D.N.M. Feb. 27, 2015). The *Espat* court held that a listing on AutoTrader.com, like a listing by an eBay seller, does not constitute "purposeful availment" by that Seller of the privilege of doing business in New Mexico. *Id.,* **9, 18. Other courts have reached similar conclusions about transactions arising out of digital marketplace listings. *See e.g., Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, 200 F. Supp. 3d 1194, 1205 (D. Kan. 2016) (Etsy webpage); *Miche Bag, LLC v. Cook*, No. 2:09-CV-166TC, 2009 U.S. Dist. LEXIS 51673, at *7 (D. Utah June 17, 2009) (eBay listing).

It is also worth noting that in these digital marketplace cases, courts have consistently found the contacts by the Sellers to be too random, fortuitous, or attenuated to be the basis for personal jurisdiction. In those cases, the plaintiffs had not asserted that those sales transactions could subject

the website operators behind the digital marketplaces (AutoTrader.com, eBay or Etsy) to personal jurisdiction in their states. Those plaintiffs and courts correctly recognized that if there were "purposeful" actors directing the sales those actors were the buyers and sellers, not the operator of the online platform. The same is true in this case.

The role of Alibaba.com in this transaction is much like the role of Global Mail in *Hunt v. Just in Time Cargo*. In that case, Global Mail was "essentially … a broker and logistics company" which contracted with online sellers to deliver goods to consumers and then contracted with delivery services and the USPS to execute those deliveries. *See Hunt*, 2022 Westlaw 35826 at *8-9. A truck contracted by Global Mail to make a delivery from California to New Jersey crashed in New Mexico, causing deaths and severe injuries.[9] *Id.* The court found that Global Mail did not direct the route the delivery truck would travel, and thus "did not purposefully direct any activities towards or conduct business in New Mexico." *Id.* at *9. "A business brokering freight which passively travels through countless states can scarcely be said to be purposefully conducting business in all of them." *Id.* Like Global Mail, Alibaba Singapore, through Alibaba.com, had facilitated the execution of, but did not direct or control, a specific transaction between an online seller and their buyer. Merely facilitating that transaction did not create the minimum contacts with New Mexico required for personal jurisdiction over Global Mail, and this Court should make the same finding here and dismiss the claims against the Alibaba Defendants.

---

[9] It is true that in *Hunt* the goods were merely traveling through New Mexico, not delivered to New Mexico, *see id.* at *9, but that difference should not change the outcome of the personal jurisdiction analysis. Because even if the Court attributes the shipment of the trampoline to Alibaba Singapore rather than to the Seller, or the Buyer, or the delivery companies — the Plaintiff's personal injury claims do not arise from that alleged contact with New Mexico (*i.e.*, the delivery of the trampoline in 2020).

22

#### 4. *Alibaba.com's Trade Assurance Program does not create personal jurisdiction.*

Plaintiffs repeatedly cite to Alibaba.com's Trade Assurance Program ("TAP"), claiming without support that the program constitutes a "direct transaction with consumers in New Mexico." (*See* SAC, ¶¶ 16-21.) The trampoline sale between Niuniu and Alamo Jump was indeed covered by the TAP (*see* Ex. F), but Plaintiff's effort to use that program as a hook for personal jurisdiction falls short for multiple reasons. First, Plaintiff's allegations about the Trade Assurance Program are irrelevant to jurisdiction over AGHL, which does not own, operate, control, etc. the Alibaba.com website, and does not exercise day-to-day control over Alibaba Singapore. (*See* Liu Decl., ¶¶ 10-13.) Second, Plaintiffs' description of that program is fundamentally flawed; the TAP provides no basis to find specific personal jurisdiction over Alibaba Singapore.

Under the Alibaba.com Trade Assurance Program, the <u>Seller</u> (here the Chinese company Niuniu) provides certain additional assurances to the Buyer (here the New Mexico resident Alamo Jump) regarding the Seller's performance under the sales contract the Seller and the Buyer are entering into. (*See* Gong Decl., ¶¶ 33-34 & Ex. 1 (TAP Rules).) Those assurances relate to timely shipment of the product and to the product meeting the specifications set forth in the contract between the Buyer and the Seller. (*See id.*, ¶ 33 & Ex. 1 at Art. 2.4 ("Trade Assurance Services" definition).) Thus, Alibaba Singapore did not direct these assurances towards New Mexico for the same reasons that Alibaba Singapore did not direct the sale to New Mexico, as discussed above, and Plaintiff's personal injury claims do not arise out of the Trade Assurance Program.

**If** a dispute arises between the Buyer and the Seller regarding the Seller's performance under a contract covered by the TAP, **then** Alibaba.com stands ready with a dispute resolution mechanism, which can result in a full or partial refund of the purchase price, **if** the Buyer opts in

by submitting a complaint under the TAP. (*See id.*, ¶¶ 35-36 & Ex. 1 at Art. 8 (Application for Dispute Determination), Art. 2.4 ("Trade Assurance Services" definition).) Any refund awarded comes from the Seller, and the Buyer pays nothing for this optional service. (*See id.*, ¶ 37 & Ex. 1 at Art. 2.4 ("Trade Assurance Services" definition), Art. 10 (Dispute Determination).) Thus, the Trade Assurance Program was simply not a "direct transaction with consumers" in New Mexico.

Moreover, Plaintiffs do not allege that Alamo Jump ever invoked the TAP dispute resolution process regarding its contract with Niuniu. (*See* Gong Decl., ¶ 38.) Alamo Jump apparently filed no complaint against Niuniu, so Alibaba.com (or Alibaba Singapore) had no contact with Alamo Jump through the TAP. Even if there had there been contact between Alamo Jump and Alibaba.com under the Trade Assurance Program, that contact for the purpose of dispute resolution would have little relevance to this analysis because "what matters [for purposeful direction] are 'the defendant's contacts with the forum State itself, **not** the defendant's contacts with persons who reside there.'" *See Stonebrook Jewelry,* 2023 U.S. Dist. LEXIS at *5 (quoting *Walden v. Fiore,* 571 U.S. 277, 285, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) (emphasis added)). In sum, the TAP provides no basis for jurisdiction over Alibaba Singapore.

Further, even if Alibaba.com's availability to resolve a hypothetical dispute between Niuniu and Alamo Jump could be considered a contact purposefully directed at New Mexico, it cannot serve as the basis for specific personal jurisdiction over Alibaba Singapore in this case because the Plaintiffs' personal injury claims do not arise out of or relate to the existence or use of Alibaba.com's Trade Assurance Program. Plaintiffs have alleged no facts to suggest otherwise.

### C. Exercising Personal Jurisdiction Over the Alibaba Defendants Would Offend Traditional Notions of Fair Play and Substantial Justice.

The Court should not exercise personal jurisdiction over either Alibaba Defendant in this case, because to do so would offend traditional notions of fair play and substantial justice. Even if the Court were to find that the minimum contacts with New Mexico existed to justify specific personal jurisdiction (which it should not), the Court must also consider whether the exercise of jurisdiction would be reasonable and comply with due process. *See Shrader*, 633 F.3d at 1239 ("To exercise jurisdiction in harmony with due process, defendants must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice.") The Alibaba Defendants respectfully submit that the exercise of jurisdiction in this case would not be reasonable.

This due process analysis requires balancing five factors: (1) the burden on the defendant from the exercise of jurisdiction, (2) New Mexico's interest in the matter, (3) the plaintiff's interest, (4) the interest in an efficient judicial system, and (5) the interest in promoting public policy. *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033 (1987).

In this case, the first factor weighs strongly against the exercise of jurisdiction. The Alibaba Defendants would bear an unreasonable burden if this case was allowed to proceed against them in New Mexico. As described above, AGHL was not involved in the events giving rise to the claims and has no contacts at all with New Mexico, while Alibaba Singapore's "involvement" was tangential and indirect at best. As a non-operating holding company, AGHL took no actions related to this case, while Alibaba Singapore merely operated the website on which Alamo Jump and Niuniu consummated their transaction. On these facts, it would be unjust to require these companies to appear in a court in a foreign land to defend against claims resulting from a

transaction between independent third parties and injuries allegedly caused by a product they did not sell. This remains true regardless of the defendants' resources.

The remaining four factors, which all focus on the interests of the Plaintiff and the forum, do not weigh strongly in favor of asserting jurisdiction over the Alibaba Defendants given the facts of this case. New Mexico certainly has an interest in seeing justice done and in protecting New Mexico residents from injuries caused by (allegedly) defective products, but those interests are not served by forcing parties with little or no connection to the relevant events to appear in New Mexico courts and consume scarce judicial resources. *See Hunt*, 2022 WL 35826 at *10 (finding that asserting personal jurisdiction over out-of-state freight broker would offend fair play and substantial justice). The same arguments apply to the fourth and fifth factors on the analysis (judicial efficiency and public policy).

As to the third factor in the analysis, one could argue that Plaintiffs always have an interest in bringing more defendants into court, but that interest does not properly apply to defendants with no, or so little, connection to their claims. Moreover, the Plaintiffs have already prosecuted their claims against an in-state defendant, clearly subject to jurisdiction in New Mexico and directly involved in the events giving rise to their claims and apparently reached a satisfactory resolution. (*See* Ex. H.) In sum, given the weakness of the arguments tying the Alibaba Defendants to this case, including the weakness of the Plaintiffs' showing of purposeful availment, the balance of these five factors tilts strongly against asserting jurisdiction over the Alibaba Defendants. Thus, in the interests of fair play and substantial justice, the Court should decline to exercise personal jurisdiction over the Alibaba Defendants in this case.

**IV.    CONCLUSION**

In conclusion, the Court lacks both general and specific personal jurisdiction over the Alibaba Defendants. For all of the reasons set forth herein and in the accompanying papers, and for good cause shown, the Alibaba Defendants respectfully request that the Court dismiss this action for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

Dated: May 29, 2024

Respectfully submitted,

SUTIN, THAYER & BROWNE
A Professional Corporation

By: */s/ Christina Muscarella Gooch*
    Christina Muscarella Gooch
6100 Uptown Blvd. NE, #400
Albuquerque, NM 87110
Telephone: (505) 883-2500
Facsimile: (505) 888-6565
Email: tmg@sutinfirm.com

Peter J. Curtin *(pro hac vice)*
**ARCH & LAKE LLP**
203 N LaSalle Street, Suite 2100
Chicago, IL, 60601
Telephone: 312-558-1369
Email: pete_curtin@archlakelaw.com

*Counsel for the Alibaba Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 29, 2024, I filed and served the foregoing electronically through the CM/ECF system to all parties and counsel of record.


By: *<u>/s/ Christina Muscarella Gooch</u>*
Christina Muscarella Gooch


7150267

28