# Exhibit A

FILED
12th JUDICIAL DISTRICT COURT
Otero County
6/6/2023 8:44 AM
AUDREY HUKARI
CLERK OF THE COURT
Albert Ochoa

STATE OF NEW MEXICO
COUNTY OF OTERO
TWELFTH JUDICIAL DISTRICT

MICHAEL SPEARS and
KELLY SPEARS,

      Plaintiffs,

v.                                                    No. D-1215-CV-2022-00560
                                        Jessen, Ellen R.

ALAMO JUMP, LLC; ALIBABA SINGAPORE E-
COMMERCE PRIVATE LIMITED; ALIBABA
GROUP HOLDING; DOES 1 through 10,
Inclusive, and BLACK AND WHITE
CORPORATIONS,

      Defendants.

## SECOND AMENDED COMPLAINT FOR PERSONAL INJURY AND PUNITIVE DAMAGES

COME NOW Plaintiffs, by and through their attorneys, Guebert Gentile & Piazza P.C.

(Terry R. Guebert, Robert F. Gentile, and Mark A. Metzgar) and LiMandri and Jonna LLP

(Paul M. Jonna and Robert E. Weisenburger), and for their Second Amended Complaint for

Personal Injury and Punitive Damages against Defendants state as follows:

### PARTIES

1.      At all times material to this Complaint, Plaintiff Michael Spears was a resident of

Otero County, New Mexico.

2.      At all times material to this Complaint, Plaintiff Kelly Spears was a resident of

Otero County, New Mexico.

3.      At all times material to this Complaint, Defendant Alamo Jump, LLC was a limited

liability company with its principal place of business in Alamogordo, New Mexico. It can be

served with process through its registered agent, David Quinlan, located at 1472 Post Ave,

Alamogordo, NM 88310.

4.      Upon information and belief, defendant Alibaba Group Holding Ltd. ("Alibaba Group") is a Chinese multinational technology company with an "ecosystem" comprised of subsidiaries in Chinese commerce, international commerce, local consumer services, digital media and entertainment, innovation initiatives, logistics infrastructure, and cloud technology. Alibaba Group, https://www.alibabagroup.com/en-US/about-alibaba-businesses (last visited June 1, 2023). Upon information and belief, Alibaba Group's principal executive offices are located at 969 West Wen Yi Road, Yu Hang District, Hangzhou 311121, People's Republic of China. Its registered agent for service of process in the United States is Corporation Service Company located at 1180 Avenue of the Americas, Suite 210, New York, New York 10036. (*see* **Pltf. Ex. A**, at 2)

5.      Upon information and belief, Alibaba Singapore E-Commerce Private Limited ("Alibaba E-Commerce") is a subsidiary of Alibaba Group and "a holding company for subsidiaries relating to China commerce, international commerce." (*see* **Pltf. Ex. A**, at 1) Alibaba.com is headquartered at 8 Shenton Way #45-01 Axa Tower Singapore 068811, Republic of Singapore.

6.      Upon information and belief, Alibaba Group Holding Ltd. And Alibaba Singapore E-Commerce Private Ltd. (collectively, "Alibaba Defendants") and Black and White Corporation(s) designed, developed, engineered, manufactured, fabricated, assembled, equipped, tested, or failed to test, approved, repaired, labeled, advertised, promoted, marketed, supplied, distributed, and/or sold the trampoline apparatus in question to the consuming public in the State of New Mexico and throughout the United States.

7.      All corporate and LLC defendants acted by and through their agents, partners, officers, and employees and are responsible for their acts or omissions through the doctrines of

*respondeat superior* or agency.

## JURISDICTION AND VENUE

8.      Upon information and belief, the Alibaba Defendants agreed to sell the trampoline at issue to a New Mexico resident, entered into a sales contract in New Mexico for the trampoline at issue, sold it to a New Mexico resident for use in New Mexico, and paid New Mexico taxes related to the sale.

9.      Upon information and belief, the Alibaba Defendants target customers in New Mexico, sell products in New Mexico, pay taxes in New Mexico, sign contracts with New Mexico residents, ship products to and through New Mexico, market their services and company in New Mexico, and market their business to New Mexico residents.

10.     Alibaba Group owns and has ultimate authority over Alibaba E-Commerce, which operates website Alibaba.com; the website is accessible in New Mexico; New Mexico residents can make purchases on the website; and the Alibaba Defendants accept payment for its goods from New Mexico banks.

11.     Jurisdiction over the parties and the subject matter herein is proper with this Court pursuant to Article VI of the New Mexico Constitution and NMSA 1978, § 38-1-16.

12.     Venue is proper in this Court pursuant to NMSA 1978, §38-3-1(A).

13.     The Court has jurisdiction over this matter and venue is proper.

## FACTUAL ALLEGATIONS

14.     Plaintiff Michael Spears is a commercial airline pilot, but while he was on sabbatical from his commercial airline job, he was test-flying fighter jets out of Holloman Air Force Base in Alamogordo, New Mexico.

15.     Alamo Jump LLC is in Alamogordo, New Mexico, and upon information and

belief, installed a prefabricated trampoline park in September 2020, which included a foam ball pit.  (Illustration below and ball pit identified in red block)



16.    Upon information and belief, Alamo Jump purchased the Niu Niu Amusement Equipment Co., Ltd. designed trampoline in New Mexico from Alibaba.com and utilized Alibaba's "Trade Assurance" program.

17.    The Trade Assurance program guaranteed Alamo Jump's payment and quality of the subject trampoline.

18.    As part of the Trade Assurance program, Alibaba.com received 3% of the purchase price for the subject trampoline.

19.    Alibaba both facilitated the sale and directly financially benefitted from the sale of the subject trampoline.

20.    Through the Trade Assurance program, Alibaba receives 3% of every sale conducted in New Mexico, constituting a direct transaction with consumers in New Mexico. In

fact, Alibaba's website specifically highlights the impact of its sales on the New Mexico Market. Alibaba, https://www.alibabapowersbusinesses.com/us-impact/#NM, (last visited June 1, 2023).

21.    Alibaba.com is a highly interactive website that provides multiple avenues for users to input and exchange information, including but not limited to, Alibaba's policing and monitoring product safety recalls, involvement in transactions through the 3% commission required by the Trade Assurance program, Alibaba's self-proclaimed role as arbitrator in any dispute between seller and buyer, and the Member platform which requires a commission fee from members, personal information, and subjects them to Alibaba policies. All of these functions require users to input information and allow Alibaba to access it.

22.    Alibaba's scope and reach as one of the largest e-commerce companies in the world directly impacts the economy and residents of New Mexico. Alibaba is directly involved in the sale of products in New Mexico, as well as providing a platform for manufacturers in New Mexico to sell on its website. *Id*.

23.    The trampoline was installed and maintained by Alamo Jump employees and managers.

24.    Alamo Jump supplied the trampoline park to the general public, including Plaintiffs, for use.

25.    The standard practice for the installation, operation, maintenance, inspection, and modification of trampoline courts is governed by the American Society of Testing and Material ("ASTM") F2970-13.

26.    ASTM F2970-13, subsection 7.8.4 requires the depth of a foam ball pit to be, at least, 60 inches.

27.    However, the depth of the trampoline foam ball pit at Alamo Jump fell tragically

short of the required 60 inches.

28.    In addition, ASTM F2970-13, subsection 7.9.1 requires it to be designed so that neither the frame nor the legs of the trampoline can be contacted while bouncing in the ball pit.

29.    However, the foam ball pit has a metal frame that runs directly through the middle of the ball pit, but a thin mat and the foam balls actively conceal this known hazard.





30. On July 22, 2022, Plaintiff Michael Spears and his wife, Kelly Spears, took their five (5) children to Alamo Jump.

31. Plaintiff Michael Spears, unaware that a hazard was being actively concealed, jumped into the foam ball pit with his kids.

32. Plaintiff Michael Spears landed chest first on the metal frame in the middle of the foam ball pit and immediately heard and felt a crack in his chest. This was immediately followed by blinding pain.

33. Kelly Spears assisted Michael Spears with putting on his shoes and took him to the emergency room.

34. At the emergency room, Plaintiff Michael Spears was diagnosed with spinal fractures and life-flighted to the University Medical Center of El Paso in Texas for a higher level of care.

35. At the University Medical Center of El Paso, Plaintiff Michael Spears remained hospitalized and was diagnosed with spinal fractures to his T1, T2, T3, and T4, and a fractured sternum.

36. Plaintiff Michael Spears was not provided with any information from any party, including Alamo Jump, regarding the unknown hazards, including, but not limited to, the concealed metal frame hazard or the inadequate ball depth, which posed actual risks to him; thus, it was impossible for Plaintiff Michael Spears to clearly and unambiguously waive his rights to bring negligence or product liability claims against the Defendants.

37. Defendants exposed Plaintiff Michael Spears to unknown risks and provided him with no specific information regarding the types of risks he was being exposed to.

38.    Upon information and belief, Alamo Jump was or should have been aware of prior injuries suffered as a result of striking the concealed hazard at issue.

39.    Upon information and belief, Alibaba Defendants installed, supplied, designed, developed, engineered, manufactured, fabricated, assembled, equipped, tested, or failed to test, approved, repaired, labeled, advertised, promoted, marketed, supplied, distributed, and/or sold the trampoline apparatus in question to the consuming public in the State of New Mexico and throughout the United States.

40.    The damages sustained by Michael and Kelly Spears were all the result of the Defendants' negligence, gross negligence, reckless and wanton conduct, and the defective product.

## COUNT I
**Strict Products Liability, Failure to Warn, Breach of Express Warranty,
Breach of Implied Warranty, against all Defendants**

41.    Plaintiffs repeat and re-allege all previous paragraphs as if fully set forth herein.

42.    Defendants are manufacturers/suppliers in the business of putting the trampoline in question on the market and into the stream of commerce; thus, they are jointly and severally liable for harm caused by an unreasonable risk of injury resulting from a condition of the product or from the manner of its use.

43.    An unreasonable risk of injury is a risk that a reasonably prudent person having full knowledge of the risk would find unacceptable, taking into consideration the ability to eliminate the risk without seriously impairing the usefulness of the product or making it unduly expensive. Such an unreasonable risk of harm makes the product defective, irrespective of the care taken in the manufacture and supply process.

44.    Plaintiffs were people who could reasonably expect to use the trampoline in question.

8

45.     At the time of the incident at issue, the trampoline in question was defective as a result of the following conditions, which include but are not limited to:

A.     The trampoline was designed and/or manufactured such that a person could forcibly strike the frame during normal and foreseeable use;

B.     The trampoline in question was designed and/or manufactured in a manner that the foam ball pit was tragically not deep enough;

C.     The trampoline was designed without proper warnings and/or instructions regarding the shallow nature of the ball pit and the hidden metal frame;

D.     The trampoline was designed without proper warnings that it was unfit for its advertised use;

E.     The trampoline was designed and/or manufactured with substandard materials; and/or

F.     The trampoline was designed and/or manufactured in a manner that would result in injury during normal and foreseeable use.

46.     At the time of the incident in question, Plaintiff Michael Spears used the trampoline for a purpose and in a manner which could reasonably be foreseen.

47.     Defendants could not reasonably expect that the risks of injury and death set forth herein were obvious or known to foreseeable users of the trampoline such as Plaintiff Michael Spears.  Plaintiffs' injuries and damages were caused by a condition or conditions of the trampoline which were not substantially changed or unforeseeably altered from the condition or conditions in which Defendants placed the trampoline on the market.

48.     Defendants breached their express or implied warranty that the trampoline in question was fit and safe for ordinary use.

49.    The defective conditions of the trampoline, either singularly or in combination, were a cause of Plaintiffs' injuries and damages.

50.    Defendants' conduct was negligent, reckless, grossly negligent, and wanton.

## COUNT II
## Negligence against all Defendants

51.    Plaintiffs repeat and re-allege all previous paragraphs as if fully set forth herein.

52.    Defendants manufactured, supplied, assembled, and/or installed the trampoline in question and had a duty to use ordinary care in manufacturing, supplying, assembling, and/or installing the trampoline in question.

53.    Defendants had a duty to use ordinary care to avoid a foreseeable risk of injury caused by the condition of the trampoline or the manner in which it was used.

54.    The Defendants' duty to use ordinary care to avoid a foreseeable risk of injury continued after the trampoline was installed.  Defendants are liable if they knew, or in the exercise of ordinary care should have known, of a foreseeable risk of injury caused by the condition of the trampoline or the manner in which it could be used.

55.    Defendants had a duty to use ordinary care to warn of a risk of injury about which they knew or should have known.

56.    Defendants had a duty to warn that the foam ball pit was too shallow.

57.    Defendants had a duty to warn of the actively concealed hazard, the metal frame running through the middle of the foam ball pit.

58.    Defendants had a duty to use ordinary care to provide directions or instructions for the use of the trampoline to avoid a risk of injury caused by a foreseeable manner of use.

59.    Defendants had a duty to use ordinary care to inspect the trampoline for conditions which could expose users to the risk of injury.

60.     Defendants had a duty to manufacture, repair and/or replace the trampoline at issue before assembling and/or installing it with conditions which would expose users to risk of injury and death.

61.     The duty of care increases with the severity of danger, thus Defendants' duty was especially high given the likelihood of death or serious injury from use of the trampoline during normal and expected activities.

62.     Defendants knew or should have known of the defective design of the trampoline in question prior to the manufacturing, selection, assembly, installation and/or construction, and supplying to the public for use.

63.     Despite that it knew or should have known of the dangerous and defective design, Defendants manufactured, supplied, assembled, and/or installed the trampoline for the public to use.

64.     At the time of the incident in question, Plaintiff Michael Spears was a foreseeable user of the trampoline for a purpose and in a manner which could reasonably be foreseen.

65.     Plaintiff Michael Spears could not reasonably expect that the risks of injury set forth herein were obvious or known to foreseeable users of the trampoline in question, including Plaintiffs Michael Spears and Kelly Spears.

66.     Defendants' negligent acts, omissions, and breaches of the respective duties, either singularly or in combination, were a cause of Plaintiffs' injuries and damages.

67.     Defendants' conduct was negligent, reckless, grossly negligent, and wanton.

## COUNT III
## Damages

68.     Plaintiffs repeat and re-allege all previous paragraphs as if fully set forth herein.

69.     As a direct and proximate result of the defective condition of the trampoline in question, the negligence of the Defendants, and the resulting incident leading to Plaintiff's serious injuries, Plaintiffs seek damages including the following:

A.    Loss of consortium damages to Plaintiffs:
B.    Plaintiffs also seek lost wages,
C.    medical expenses,
D.    pain and suffering,
E.    past and future loss of enjoyment of life,
F.    hedonic damages,
G.    punitive damages,
H.    pre-judgment interest,
I.    post-judgment interest, and
J.    their costs of suit, as allowed by law and;
K.    All other damages available by law or statute

WHEREFORE, Plaintiff requests compensatory and punitive damages, costs, pre- and post-judgment interest, and such other relief as permitted by law against the Defendants.

Respectfully Submitted,

GUEBERT GENTILE & PIAZZA P.C.


By    _/s/ Robert F. Gentile_____
        Terry R. Guebert
        Robert F. Gentile
        Mark A. Metzgar
        P.O. Box 93880
        Albuquerque, NM 87199-3880
        (505) 823-2300
        tguebert@guebertlaw.com
        rgentile@guebertlaw.com
        mmetzgar@guebertlaw.com


AND

LIMANDRI & JONNA LLP

Paul M. Jonna *pro hac vice*
Robert E. Weisenburger *pro hac vice*
P.O. Box 9120
Rancho Santa Fe, CA 92067
(858) 395-5585
pjonna@limandri.com
rweisenburger@limandri.com

*Attorneys for Plaintiffs*

I HEREBY CERTIFY that on the 6th day of June, 2023, I filed the foregoing Second Amended Complaint for Personal Injury and Punitive Damages electronically through the State of New Mexico's Odyssey File & Serve system, requesting that the following counsel be served by electronic means:

Stephen D. Hoffman
Vanessa E. Garcia
Lewis Brisbois Bisgaard & Smith LLP
8801 Horizon Blvd. NE, Suite 300
Albuquerque, NM 87113
(505) 828-3600
Stephen.Hoffman@lewisbrisbois.com
Vanessa.Garcia@lewisbrisbois.com
*Attorneys for Alamo Jump, LLC*


*/s/ Robert F. Gentile*